Jessica Ellsworth on behalf of the appellant and I'd like to reserve three minutes for rebuttal. This appeal is about whether it is essential for the use or purpose of a snack food that it have the product configuration of Pocky, an elongated thin biscuit stick with one flat end that's and one rounded end that's coated on more than half but less than the entirety of the stick with a chocolate or cream coating. To ask that question is also to answer it. There is no way in which undisputed facts in this case show that it was essential to the use of purpose of a snack food to have this configuration. Let me ask this, I understand going with whether or not it is essential and it isn't essential per se because you can just get your fingers all gooked up with chocolate and eat it. But the Supreme Court has said in Qualitex and this is at least to my humble mind a more helpful way of looking at it that the quoting the functionality doctrine forbids the use of a product feature as a trademark where doing so will put a competitor as a significant disadvantage. Now and that's at the page 169 of the U.S. reports. Seems to me if we were to reverse that would mean that the only cookie and I'll call it a cookie biscuit whatever that anyone at least in the United States or any place where U.S. law applied could eat without getting their fingers and face all gookey would be your product because your product would be the only one that would have a sticker test to it. Now why am I wrong about that? It's what I'm saying not relevant. So your honor I think there are two things that I would like to say in response to that. The first is that the language that you quoted from the Qualitex opinion is about the aesthetic functionality test which is a separate test of functionality from the utilitarian functionality test. Graphics distinguish those two tests and explain if that non-reputation related significant disadvantage was about aesthetic functionality. I could press you on that. Your argument section on page 22 starts with saying only quote if it is essential to the user purpose and that's dovetailing with what you're saying now but that word only isn't in Qualitex. The word only isn't in graphics and while it is true that Qualitex looked at an aesthetic right and the second and ninth circuit cases you cite happen to involve aesthetics I'm not aware of any precedent certainly not from our court of the third circuit that limits it or that uses the word only. So where do you get that limitation from and why is that binding or persuasive upon us? So your honor I think when you are looking at the language that the supreme court used in traffics when it was talking about the inward formulation which gets repeated in Qualitex as well when something is essential to the use or purpose putting meat on the bones of what that means is something that courts have struggled with over time but the the principles that I think emerge from from looking at all of those cases is that courts are trying to figure out how to police this line between what's properly in the arena of trade dress or trademark and what's properly in the arena of patent law and so they're looking to determine when there is something that is really truly a useful product feature. It's not just a useful product but the design itself is conveying some additional utility beyond the utility of the product itself. Now we're talking because the point of trade dress is not to protect everything it's to protect against consumer confusion. It's a species of trademark right so is the consumer going to think this is really about branding like the shape of a hersey's kiss or the stamp on an oreo cookie or not and that dovetails with our earlier precedent. We know we've got the American freedoms case, we've got Keen Corp. They were asked to focus on whether it's related to the utilitarian function of the product or feature. If it's if then that can be protected but the statutory words are functional not essential and those third circuit precedents I cited don't say essential and I don't see anything in quality. I see essential is one way to show that it's functional but I don't see that that's the only way so why shouldn't we be focusing on is this not something aesthetically incidental or distinctive branding function that's not functional? So your honor the first thing I would say in response to that is that the stick shape the uncoated portion of the biscuit stick is only one aspect of the overall product configuration. If the product configuration that were claimed in the trade dress were just that stick this might be a different question that would have a different analysis but it is the overall configuration and I think the most useful I'm not sure I follow that because your folks made a decision and it was a good decision it seems to me to put the chocolate coated cracker biscuit cookie on a stick. Now the only person that seems who may object my grandson would not like that he's one years old and when he eats chocolate it ends up in his diaper I mean it's everywhere but assuming that we've got adults who want to be able to maybe over lunch whatever eat a cookie biscuit and not get chocolate all over themselves it helps to have it on a stick and you made a decision a well-informed decision to do that so that folks who eat the brookie can do it without getting chocolate all over themselves but you're saying that you're the only product that consumers can consume without getting chocolate all over themselves. So Judge McKee my answer to that is the second point to what I wanted to say to you earlier when you raised that same question about whether it's the only cookie it is far from the only cookie. There are 30 examples in the record of biscuit and chocolate combinations most of which involve some uncoated portion in which someone can pick up the cookie we show nine of them on page 33 of our brief. I'm very familiar with Milano cookies and my waistline would prove that so I have one in mind but if they wanted to put it on a stick why wouldn't they be able as long now if they start configuring the Milano cookie in a way that is very long and slender and is very consistent with the way you've configured the pokey that's very different as Dr. Beebe said maybe then we get into consumer confusion but absent that it's got its own shape kind of like a fiddle I guess on a stick why shouldn't they be able to do it to improve their product by fixing it so even if I don't pick it up by the chocolate and pick it up by the other end then I get grease or gore whatever it goes into the damn thing on my fingers why shouldn't they be able to do that? Judge McKee I think that if Pepperidge Farm wanted to put the mint Milano cookie or the Milano cookie they wanted to add a stick on one end of it it would not be a product configuration that would map onto our trade dress. Our trade dress covers a very particular width and length a thickness of coating a percentage that's uncoated and coated and as the Herman Miller case that we cited in our recent 28J letter explains when the product configuration is the overall product configuration the court's analysis does not look at whether one particular feature might be functional or not. We think there's a real you're saying that coated uncoated portion which is an interesting way of looking at it I've never even heard of a pokey before today so if my questions sound in ignorance forgive me I'm going to make amends for that go out and buy a pokey if I can find them but the store's being shut down. Is the stick edible? I just assumed the stick was not edible. I apologize for interrupting Judge McKee it looks like we lost counsel. We lost your colleague Mr. Dabney why don't we hold off and all right thank you I'll just be a moment to get him back on no problem meanwhile I have Amazon bring me a couple of cases of pokies you try the pepper too I guess I'm not living right here if I spent more time with my grandkids I'd be able to eat all kinds of junk food so Miss Ellsworth you're in New York? I'm in Washington DC sir. Washington okay so Greg do we know what the problem was did the system kick him off or I'm not sure I just sent him another email yeah well if he can't get in by video he could phone in yeah yeah right yeah I will let him know that apologies me video technology has largely been working well but it really has yeah yeah today's not yesterday it was my fault my computer crashed and I did it again today as a and it's a Mac by video Miss Ellsworth or audio have you done money by video or audio I have done I argued before this court by audio back in March and I've done a couple federal circuit arguments also by audio but this is my first one with video okay you know okay we have Mr. Dabney again okay it looks like he's able to connect your video again great all right good all right I was just asking Miss Ellsworth the following question and I'm not sure how much of what you heard and we stopped when we realized we lost her before she answered it I apologize for that happened to me today it happened to me yesterday don't worry about it it's it's never happened to me before so I just knew before we got started that it must happen during I apologize by the right I'm using a Mac to a max that's not supposed to happen with my question was I'm assuming because I've never had a pocky that the uncoated portion that you're I think very astutely describing it as the uncoated portion but I'm assuming that's a stick it's not biscuit material itself that is not coated is it so Judge McKee I think that's a mistaken impression on your part it is a biscuit stick so think of something that's shaped like a rod the entirety of which is edible the entire portion of it is then coated people eat the entire thing okay so it's not like a popsicle stick it's not like a lollipop stick this is an entire edible product it's like a a KitKat bar or a mint Milano cookie at the end of it at the end of eating it there may be some crumbs but there is uh no stick that you're left okay that's very helpful it doesn't make it a functional then it seems like that trade dress makes it easier to hold easier to to consume might even make it easier to share so your honor I I would like to address each of those points that you raise um starting with the easier to hold point and on the easier to hold point I think the most important thing to start with recognizing is that the uncoated portion is just one part of the product configuration so you're gonna have to hold it yeah go ahead you could have an uncoated portion of any shape size biscuit that doesn't look like poppy and it would not run afoul of our product configuration trade dress it's like the handle in the Bowdoin coffee pot case okay but Ms. Ellsworth I thought by the way your and your opposing counsel's use of visuals was very helpful in the brief but pages 34 and 35 have a bunch of different photos of other particular trade dresses and to my untutored eye most of these other shapes look much more interesting the Milano has a little kind of both of them are not they didn't have to be shaped this way it's a pretzel within a pretzel or a pretzel wheel or a bunch of triangles for a Toblerone bar a stick is a much more generic kind of shape here if there were some special twirling or whirl of an identifying function but it's not just that there are other ways to do it but is the way that you did it distinctive enough such that it imparts this is being made by the Izaaki Glico company and someone else is really trying to rip off your reputation by shaping it the same way so your honor two points in response to that the first is that the question about whether this is a basic food shape that I think is what your honor is is suggesting that a rod is a basic food shape that is a disputed fact and you can see this in the record at appendix 27-22 because our expert explained that most food shapes the more common food shapes in the U.S. food industry are round circular or rectangular it reminds me of a candy cane excuse me your honor that reminds me of a candy cane they're round they're long there's nothing really distinctive about about it except that many different manufacturers make the same product so your honor in response to that I think you're asking about questions that hint at the a different part of the trade dress analysis which is whether something has acquired secondary meaning now in order to get our trade dress which we got back in 1989 the PTO had to agree that we had acquired secondary meaning in our who conducted a consumer survey that found that hockey is actually identified as a branded product those questions though don't relate to functionality functionality is a different prong and we know that the PTO thinks that all sorts of snack foods are entitled to are non-functional and are entitled to trade dress protection that's why Hershey Kiss has trade dress protection and goldfish crackers Milano cookies Hershey bars Toblerone bars all of these because they are a configuration that someone has come up with as a matter of design choice what length to make it what size to make it what proportion of chocolate or other ingredients to use all of those are design choices that companies make if a company makes the design choice it then acquires secondary meaning in that particular design choice and there is a likelihood of confusion with someone else's product it can bring a trade dress suit and that's exactly what we did what what is distinctive about your product though as I as I understand it is the part at the top where you can hold the product am I correct about that well what is distinctive about our product is the entirety of the product design that's why you well then you you know all all the edible foods that seem to appear the like would have the same protection I mean the only thing distinctive about it is the top it seems to me because the lower portion is a round piece of chocolate why I don't understand how that gets to this trademark protection I thought it was the the handle the top that is distinctive am I wrong about that so your honor I think um there may be some confusion there are not um any other products in the record anywhere other than Pepero and the products made by our licensee that have this shape there are dozens and dozens and dozens of products that are out there in the snack food industry there are dozens and dozens of products that combine biscuit and chocolate many of them do have trade dress protection but not all of them some of them are as just beavis suggested some of them are simply too common of a shape I think an ordinary chocolate chip cookie for example is something that no one can get trade dress protection in because it's not perceived as baked as a circle but there is not record evidence that shows that the decisions about how to produce hockey flow from uh flow from really utilitarian design choices as opposed to flowing from uh a desire to make something that looks fun and different and innovative which is what hockey is wait a second I mean you're there are some you take an oreo and it's obvious the reason oreo was stamped with the oreo logo was to brand it as an oreo but when we talk about the reason why yours is shaped the way that it is you know it is quite important that you've used advertising materials that tout utilitarian advantages you don't get it on your fingers they're utilitarian properties to the unpatented design elements here and the utility patent of the ultra slim manufacturing method is not relevant to most of the pocky ultra slim is this tiny fraction of them so of those four factors you do have their alternative designs available but um the other factors make it seem like they weigh in favor of you know this is how you've been selling it this is why it came up this is history of hockey it's in your your client's corporate history of hockey as described it has a handle and it makes a fun snap and that's just that's connected to the use of the the biscuit there is love it so judge beavis i'd like to start with the first of those factors which is the the 2014 patent let's be clear this 2014 patent is a manufacturing method patent it does not claim a trade dress that has existed since 1966 this patent is not remotely like the one that the supreme court addressed in traffic right i think it's distinguishable the patent comes along way at the end of the process it's not at the beginning and you're trying to use this to extend it i mean that was traffics let's agree that the that if we think the in terms of the factors the other factors here can you help us weigh yes i can let's let's start with the advertising and i think it's very important when you look at advertising to focus on whether the advertising is actually advertising the product or the design of the product based on its utilitarian advantage and let me just use two if i could your honors i'd like to use two of the cases that latte sites repeatedly to show what advertising about a looks like in this ctb case from the fourth circuit earlier this year the question was whether a chicken feeder uh was functional there was a patent that specifically claimed a particular funk a particular uh spoke profile for the chicken feeder and the company's advertising material touted that this design would let birds get out of the pan easily it didn't say we're selling a chicken feeder by pointing to characteristics of its chicken feeder that were like everyone else's most of what the district court pointed to here is about the fact that pocky is easy to consume it's convenient uh it can be shared that is a characteristic of a snack food product and not this design and the functionality doctrine plays a very particular role in deciphering those two the flexible steel case that latte sites uh i think makes the same point there was a patent that claimed an improvement in having a scallop leading edge to a belt fastener because it would reduce where it would improve the life and that's exactly what the advertising said our design is better because we have this patented scalloped edge but i don't think we i mean i was a little surprised when i read our own third circuit patent in american greetings we treated the writing on the tummy of the care bear as functional because it engenders certain warm and fuzzy feelings towards the care bear so we're not supposed to take this very narrow engineering approach to what is functional right if that if it serves the feelings that can be that's a functional part of the product so your honor i think the care bear's case is a good one for you to focus on but even there but the court said with the tummy graphic played a utilitarian role in helping children express their feelings it wasn't just that it was a stuffed animal but it had a particular additional benefit and that the particular graphics used the court said were the quote best ones to convey certain feelings so there was a real sense in which the advertising was promoting this particular design as carrying a utilitarian benefit even in the stuffed animal world in the in the in our world that we're working on in this case documents that say hockey is an easy to eat product you can take it on the go that doesn't differentiate hockey from a hershey's kiss a kickback a snickers bar goldfish crackers or anything else it's simply advertising that hockey is a snack food because there are lots of people like judge mckee who don't know hockey and so they might without indicators that it's a snack food they aren't sure whether it's actually on a stick like a lollipop but what what exactly it is that sort of advertising is not the sort of advertising any court has relied on and i would let's assume that one of your competitors either um is it latte or lot however that's pronounced either the the appellee here or a peppered firm or someone decides to take a biscuit not shaped so closely to your pocky that it would yield consumer confusion pretty distinct shape and they decide to put it on a stick which is not edible unlike your product would that in your mind raise any uh concern about let's assume that you win this case and you get a trademark protection here trade dress rejection would that raise any uh concern in your mind as to whether or not that product was an offender it would not your honor because we our trade dress does not claim any food product that has a place for you to hold on it this is again why i think the modem case that i pointed the court to is so useful because what the seventh circuit said there was justice bodin didn't claim any coffee maker with a handle it claimed a particular design of a handle well pocky doesn't claim any food product that has an uncoated portion of the food that you can hold on to it claims you said uncoded portion of the food that's putting the rabbit in the hat don't think of it in terms of uncoated portion of the food it's not food it's a paper stick or a plastic stick that the biscuit cookie is attached to you have no problem with that that's that's different that conveys i think it would probably have problems as well because of a likelihood of confusion um that might present a different that's why i said that in my hypothetical the top is totally distinct in the shape of a pyramid whatever totally there's no question and so it's just like in bodin where the coffee press manufacturer didn't need to prove that handles don't serve a purpose it needed to prove that its particular design didn't serve a purpose and here you could have uncoated portions of any thickness any dimensions any length any percentage of the product the coating could be very thin it could be very thick these are all design choices all right so what you want to say is let's say we apply the incidental arbitrary or ornamental test all right i'm not sure you would agree but if we if we take it there you don't claim that having a portion uncoated is incidentally arbitrary and ornamental you just want to claim that the collective look and feel with the rounded one end paper other end and the proportions but if we take it that far then is a corollary of our holding going to be that it's fine for latte to make a somewhat longer or somewhat thicker stick your honor i think that if they made their stick longer or thicker or curved or made the coating a different proportion of the actual product then we wouldn't be in this case it's because they exactly want to copy the pocket product that we're here and in america the products are just an aspect of the product if they copy the entire product then there would be a problem but my understanding is they simply want to uh you're saying copy have a product that has a similar kind of configuration insofar as it has a handle or part of it that can be identified as a handle your honor it is the exact same product it is the overall product configuration it is identical you can see pictures of the two products in the briefing they map they map to each other uh identically it's not that they want to just have an uncoated portion or something that they could call a handle on their product they want a pocky look alike and that is why there is a trade dress problem here the the biggest problem you have is that the peppero the latte product has a handle on it is that that accurate you wouldn't have any objection if it were just a a thin round uh chocolate stick uh what you're focusing on is that latte put a handle on top of it that accurate just 20 that's that's not entirely accurate because what we're focusing on is that the overall look of the product is identical so a piece of that is the same uncoated percentage but it's also that the entire product looks the same it's the entire the shape the width the diameter the percentage of coating the thickness of the coating all of it is identical what if latte took the product and then they spelled out in yellow yellow letters peppero by latte on the stick and otherwise it was the same thing i mean it doesn't appear that their packaging looks like your packaging their packaging looks different let's say they extended that and they kept the stick and everything the same but they put their name prominently on it so that people who pulled it out could see there's yellow lettering on it how would you have a trade dress problem at that point so your honor i think at that point we would be on the question would be likelihood of confusion i don't think that that uh hypothetical you're posing would have any impact on the functionality analysis the functionality analysis is about the whether the design itself performs some useful function or is a design choice if they add their name to it or some other distinguishing feature that eliminates the likelihood of confusion that would be a different problem for us to have but wouldn't mean that there's a functionality problem and i think this court's decision in in sweet streets is worth talking about for a minute because in sweet streets the court faced a record that it found showed that the shape of pie dough was quote essential to the purpose of an effective single serve fruit pie and affected the cost and quality of the pie okay sweet street is non-presidential but still we can you know you can argue it to us what's persuasive but sweet street did not take your narrow approach to what's essential sweet street said the six folds there's a reason why they did the six folds right that was that just turned out to have the optimal ratio of crusts for baking and stuff like that so on a really literal understanding of essential you wouldn't say six folds is essential but collectively the decision about the way you made the pie crust was about the way you bake it the way you put it together it didn't have some kind of ornamental or identifying trade dress quality to it so your honor i think uh first of all that the court did go further than you're suggesting and it used language like the six folds were quote critical to minimizing the cost of the pastry critical to reducing waste gave the quote best bake had the quote least leakage and quote worked the best in testing so there was some evidence not like this case that this six fold actually did perform a very specific function but i also want to make clear that our definition of essential is not quite as narrow as your question suggested and something is essential to the use or purpose as the the supreme court has articulated it and as it has developed in the case law it means that there is some additional utility that is flowing from the design itself the product is working better than other products in the same category because of this design that's what uh nearly every court the mccarellades case the millennium case from the ninth circuit the herman miller case the design and other products in the same category and that's where um the the undisputed facts i think here show that this is at best a disputed question that could go to a jury and and lattes free to argue to the jury that it should find that it's functional we're free to argue to the jury that there were significant design choices that went into the length and width and an overall product configuration that we chose and that's something that could be resolved on a jury perhaps one way or the other but it's certainly not something that's amenable to resolution and summary judgment and that's particularly true where we have a presumption in our favor of non-functionality from our incontestable trade dress that's on the principal register right why isn't it functional though i think i might have uh addressed this before that a that portion at the top makes it a lot easier to hold and to consume why isn't that a functional element of pepper your honor i'd point you to what this court said in the american greetings case where it said a rule denying protection to a combination of features including a functional line would emasculate the law of trade dress infringement what page you're reading from uh i don't have the page your honor but i'd be happy to to provide it in my rebuttal i can i can pull it up well i have the pdf in front of you i'll find it okay i think that's important because there are uh numbers a number of cases include including american greeting but also quick billiards case the millennium labs case functional features can be incorporated into a trade dress so long as the overall uh product that it's kind of configuration that is claimed is not functional in its entirety and the herman miller case i think our 28 j letter helps make this clear every chair is going to have a backrest that doesn't mean that every chair is going to be functional just because it has a functional element you're looking at the the particular design as it is claimed in the trade dress and here our claim is it's much bigger than just the handle i'd also note that it's a disputed fact whether keeping your hands clean and not touching chocolate is actually a purpose of snack food does anyone i'm imagining everyone on this panel you may not have eaten pocky but you've probably eaten a snickers bar or a hershey bar or a twix bar at some point in your life you touch chocolate even lattes expert testified that when eating chocolate chip cookies he gets chocolate and crumbs on his hand so there's nothing about not touching chocolate that is critical to selling snack food products think of doritos think of potato chip barbecue potato chips of course things sometimes get on your hand but that is not the purpose of a snack food product but that's it that's at odds with what you said earlier about it sufficing that something works better someone can eat those other things but some fraction of consumers are going to choose pocky because they don't want to get it on the hands or because they want to have enough in a box so now you're kind of slithering back towards a narrower understanding of essentiality but rather no i i don't think so i think the essentiality the first question and it is one that is disputed in this case is what is the essential purpose of a snack food i think both sides why does it have to be one essential i don't i don't know that it does have to be one but as a matter of undisputed fact here there are not purposes uh that the sides have agreed on beyond something being fairly easy to eat fairly convenient that is what has i think always distinguished even in sort of common knowledge a snack food from other foods you don't need utensils you can eat it on the go that's that's what makes it you can stick it in your bag that makes it a snack food our expert gays testimony in this case is that the overall combination is not functional you can see that in levine's dr levine's uh declaration at paragraph 36 of page appendix 27 56 and you can see it in professor latela's declaration at paragraph 29 to 30 at appendix 27 22 so again there are disputed facts about whether the overall combination here is functional and in fact as both of our experts also testified you can eat hockey under almost every circumstance uh that's an ordinary circumstance for eating and you won't get chocolate on your hands just like you don't get chocolate on your hands when you necessarily any product that is fully coated so that the um the notion of having an uncoated portion is not something that is a matter of undisputed fact shows that our product works better if the court has no further questions i'll reserve the remainder of my time for rebuttal okay thank you i have none uh judges beavis or frontage anything else i have been your honor your honors the district court was clearly correct to find there's no genuine issue of the material fact that the pocket configuration uh is essential to the use or purpose of the of a snack and is functional as a matter of law let's let's uh remember here what we're talking about we've been talking for i think a little over half an hour about a product that consists of two features a generic biscuit stick which they admit doesn't constitute their dress and and it partially mostly covered in chocolate that's what we're talking about those are the features so it's very important your honor your honors there look at their trade dress okay how they define it there is no limitation on the dimensions of the product the the width of the product the length of the product so it's just an overall if it's a biscuit stick there's no limitation on how wide it has to be around there it has to be and there's no limitations on how much chocolate there has to be on it or doesn't have to be on it all it has to do is be a generic biscuit stick and mostly covered in chocolate the dad makes an excellent argument if you look at them and you look at the packaging and you look at the stick they're virtually identical uh even even the uh the photo uh in the front of the packaging is is very similar um why isn't that a title of trademark protection they look identical that may be in every way that may be true your honor but that has absolutely nothing to do with whether or not the supreme court has said as we quoted in the samara case uh and also yeah in the case that uh product designs almost invariably even the most unusual product designs uh do not serve to identify source and that's why when you're talking about product designs in order to product configuration designs in order to show protection you have to uh you have to show that product is non-functional here the product configuration is clearly functional and there's no dispute it's functional all right mr mr dabney now i understandably secondary meaning is a somewhat distinct issue but what do you say to miss ellsworth saying that bruce isaacson did a survey before the 1989 pto registration that that this had it had some secondary meaning in the eyes of consumers this is served to identify the source as zaki glico it's legally irrelevant whether or not something has secondary meaning or not a product configuration is as a matter of law legally irrelevant to whether or not it's functional that is essential to the use or purpose of the product or relates to the cost or quality of the product that's because of the public policy that you can only protect product configurations through patents and copyrights if it's not protected by patent or copyright it's usually and this is from the supreme court it's usually in traffic uh must subsist trade dress protection must exist that in many instances there is no prohibition against copy with the services so almost invariably even the most are not intended to identify source which case you're quoting from i'm quoting from the graphics 532 us at 29 and then walmart versus tomorrow with 529 us at 213 okay so what what do you make of the the photos at pages 34 to 35 of appellant's brief how is this how is this different would you say that the the hershey's chocolate bar necessarily falls or the andy's mint they're probably the least distinctive images there do they fall or are they distinguishable from this the first thing i would say is they're completely irrelevant because no case is ever linked i mean the pto will register basically a ham sandwich if you wanted to register ham sandwich there's been no adjudication of those trade dresses by any court i don't know whether the what the why those designs are like that i don't know if there's a utility patent i don't know if they those uh companies tout that the configuration serve some utilitarian function i don't know what the founders of those products that we chose this product to be this way because it's it's easier to eat but this is what we do know your honor something judge beavis you said earlier today it's undisputed in this case we know the answer to those questions in this case glycosone internal documents say we chose the biscuit stick because it's easy to hold and we covered it partially with chocolate so there's a handle and that's the end of the case let's go through the advertising my my friend on the other side talked about the advertising but let's really go through the advertising and see what it says here i'm reading from volume uh two of the joint appendix uh here we go appendix 424 these are all requests for admissions about what's on on uh glycos website what they tell consumers about the reasons why the biscuit is thin and why it's partially covered in chocolate that's all we're talking about those are the those are the features what's the page the pdf page 24 request number 11 appendix 2 424 appendix uh yeah 2 request number 11 let's go through this admit that your pocky cookie sticks have been described as having a quote no mess handle unquote on your website pocky.com there's objection here which is subject to the objection glyco admits that the language recited in the request has appeared on its website okay so they they do advertise that that the cookie stick has a no mess handle on their website let's go to page 426 of the joint appendix these are requests for admissions 426 request number admit that you have referred to your pocky cookie sticks as and quote easy to handle stick chocolate off your hands on your website pocky.com response glyco admits that the for admit uh number 17 admit that you have referred to your pocky cookie sticks as the snack with a handle on your website at you know pocky glyco.com admits that the language recited in the request has appeared on its website let's go to page 430 of the joint appendix request number 23 admit you have described that your pocky cookie stick as quote easy to handle unquote on your website pocky glyco info chronic response glyco admits that the language in the request has appeared on the website let's go to appendix 430 uh page 431 request number 26 admit that you have described the pocky cookie stick as quote generously coated with a high quality chocolate except for a small portion at one end creating a handle making it easier for multitasking without getting chocolate on your hands unquote on your website pocky glyco.com what's the response to that is hockey glyco admits that the language in the request request number 29 on uh appendix 433 admit that you have described your pocky cookie sticks as being quote in the beginning hand dipped in chocolate leaving one end of the stick quote the handle bear unquote on your website pocky.com what's the response all right all right we get the point we do get it yeah on and on on and on and on the advertising it's they selected this is what we know in this case the evidence is undisputed their own documents their own advertising they selected the shape the generic biscuit shape because it's easy to hold they partially coated it so that customers wouldn't get chocolate on their hands that's no undisputed fact we also know as an undisputed fact they've been advertising for decades and decades the true reasons why they selected the stick and why they chose partially to coat it because it's easy to hold and because so you don't get chocolate on your hands when you take you to a different question sure let me agree with you about that part of it but we we think you're overreading the relevance of the utility patent this is in a different posture from traffic's utility patent comes up very late in the game long after this etc the district court rested its holding on three points and one of those was utility patent do you want to defend that before us or say that it's not essential to the district court's ruling i don't know if it well first of all the district court was right to rely on a couple things let me just you just said you said rely rely on utility why it found that it supported it was additional okay let's go through that because because one of the things that struck me in this case is the way that the district court's opinion was just repeatedly mischaracterized with regard to what it did with the utility patent and i and i want to go through this because it's important for the i want to explain this to the court okay if you let's go through glycos opening brief okay throughout their opening brief they say they mischaracterized repeated at least eight times what the district court did with page five this is what glyco says in its opening brief the district court court put quote great evidentiary weight on glycos utility patent that's false page 16 district court how did you just instead of making this a tit-for-tat with opposing counsel whom we all presume acted in good faith why don't you take us to the portions in the district court opinion to support more let's go then let's go to the joint appendix at 20 and 21 20 through 23 okay the district court held here i'm quoting glycos utility patent and patent application further support of finding that glycos trade dress is functional didn't say it was positive page 23 considering all of the evidence in the record including glycos utility patent the court finds that no particular reasonable juror could find glycos trade dress to be merely arbitrary incident or ornamental so it didn't there's no basis for these repeated claims that the that said it did rely on the patent it was real it was right to rely on the patent and it could have given us you're saying you're saying relied you mean consider because you seem to consider this evidence is additional evidence to show what is very obvious which is that a thin stick is easy to hold and easy to eat which is exactly what was said in the patent let's go to the right let's go to the patent here's the pack this is what they told the usb tf this is the interesting thing firstly they tell themselves one thing about this product they all know internally the product was designed to be chosen to be the way it is for functional purposes they knew that that's what they tell consumer and that's what they told the pto let's go to the patent that they they told the district they repeatedly said the district was just positive volume 40 it starts at 1006 okay okay what's the title of it stick shape snack and method for producing say okay then if you go to appendix 114 that's page and then four lines starting with uh 39 here they say this is like this is what blanco told the pto this is what blanco told the patent office when it was trying to get its pack it's totally different position now if this is what they told the pto what the pto referred to stick shaped snacks having a maximum cross-sectional width of 2.5 to 3.5 millimeters are thinner than conventional shaped snacks and thus are and thus are very easy to eat and have an enjoyable new texture encouraging consumers to buy mr debney i thought that patent was only really about the ultra slim pocky which is a tiny fraction of the overall market the way no your honor well first that's correct but the way again this this is critical the way they've defined their trade dress there is no limitation on the width so yes maybe it's only two percent of their sales or one percent of their sales but they've defined their trade dress so broadly there are no limits to the dimensions there are in the patent but they're not in the trade dress registration so that their claim the way they've defined their trade dress in this case literally reads or applies to every poppy stick that anyone could make that's 2.5 millimeters 2.51 millimeters 2.52 2.6 2.7 i mean just an unlimited swath of configurations that's how they've defined their trade dress we ask them are there any limits to the dimensions in your trade dress width length the answer is no well okay maybe that goes to what we draw from the registration because trade dress protection is not limited to ones that are registered it just affects who has the burden of proof so maybe we need to maybe miss elizabeth's response would be something about well you know the rounded handle here and the tapered edge there and the rough length and the rough diameter maybe that would affect how we apply the registration can can i talk about that because that's just that's that would be impermissible to say that at the beginning of every one of these trade dress cases the first thing you do is you ask the plaintiff and judge fuentes knows this from the fair winds case you ask the plaintiff what is it that is your trade identify it for us please so we know precisely what it is your claim and that's what we did in this and then we followed up and said what are the limitations on the dimensions of your trade dress the length of the stick the width of the stick the answer is there are not so miss earlier that she didn't think there would be a problem if someone sold a longer stick or a fatter stick or something else well she said that but that's not what the trade dress says your honor we have to go this case boils down to how they have defined their trade that's fond of king four that's square one in a trade dress case if you're defending it you ask the defendant of the plaintiff what is it you're claiming we asked them they said there are no limits now she won't have limits which i understand because the trade dress as it's defined by them has no limits and literally reads on an unlimited number of stick that they claim in the patent so they've defined their trade dress to to include but not just two percent of the products they happen to be selling but any product that anyone else wanted to shift uh sell that's between 2.6 2.7 2.8 it's an unlimited swath of products that they admit are functional they claimed this product they claimed a biscuit stick that has that has cross sectional width of 2.5 to 3.5 millimeters i mean that's what that what claim 14 says a stick shape made by the method of claim one claim one an invention a method for producing a stick shape snack comprising blah blah you know you get down to to you know this on six you get down to like line 55 or something stick pastries having a maximum cross-sectional width of 2.5 millimeters to 3.5 millimeters we do understand your argument mr daphne we did been very forcefully very clearly made and you're you're way you're way over your time uh we let these boys go a bit over also so uh can i say one other thing your honor why don't we hear from myself we'd really understand your argument you made it as thoroughly as anyone possibly could and and why don't we hear from myself with uh has to say results with a few points to make can you hear me yes okay my computer was telling me i was muted so i wanted to confirm um first uh the page i was citing from american greetings about no functional features being included with a mask address protection it's at 11 43 i found it right the second point that i want to make relates to the patent that mr daphne was just speaking to you about this is very important and i don't know if mr daphne thinks that because you guys are not the federal circuit you won't appreciate patent law claim 14 is a dependent claim it does not claim a biscuit that is 2.5 to 3.5 millimeters thick writ large it claims a it is is this is a kind of claim in a patent that's called a product by process claim it only claims a biscuit made by a particular manufacturing process make it by any other process it's not claimed in the patent this case is like mccarellades in mccarellades there was also a manufacturing patent and it's really the only other um case that cited in the briefs that involves a patent like ours one that claims a method and then the product that results from that method that is very different than claiming the product and and and mr daphne's reference to the title of the patent is misleading i think that's what misled the district court judge this patent in claim 14 does not claim shake snacks it claims a particular snack resulting from a particular method and that method only i want to briefly respond to the suggestion that there are no limitations um on the width or the length in this trade dress there are absolutely limitations if latte wanted to make a competing product that was an inch and a half wide and an inch and a half long but only part of it was covered with chocolate go for it it would look nothing like ours there would be no likelihood is because they want to limit the exact proportions that are set out in our trade dress that there is a problem the bowden case which i mentioned to you um in my in my opening the bowden case i think is particularly helpful because it shows that a party with a handle and in that case it clearly is a handle a coffee pot handle the question is not whether having a handle is useful but whether having this designed handle is useful so even if you think having a handle having an uncoated portion of a snack product is useful does it have to look like this one as opposed to having a curve being thicker being thinner being larger being smaller all of those are design choices finally um on the pto registering a ham sandwich i think you all know that's not true but it is worth noting that latte itself sought to register its product implicitly telling the pto that it viewed its exact identical product configuration as non-functional and the pto rejected it not because it was functional but because the leco already had trade dress protection for that exact product configuration so for all of these reasons as a matter of undisputed fact the district court erred in in how it approached functionality it erred in the weight that it placed on the patent in this case it erred in not addressing the overall product configuration and in focusing on on one particular aspect the uncoated portion and the detriment of the rest of it for all of these reasons i'm happy to answer further questions but we would ask that you reverse the summary judgment order and remand this case for trial okay thank you judge beavis anything further nothing further thank you judge fuentes no nothing for me okay and i was what i was going to suggest is that you submit a 28j letter um so we can so we can wrap up and we will certainly consider anything you submit to us after the argument in the form of a 28j letter and we will be happy to consider it has been extraordinarily well argued by this 28j letter include yeah i mean one of the things i want to point out is that their own expert admitted okay we'll put put that in this because now we're back into argument put that in the 28j letter okay i know 28j the rule and its text is a bit confined but i think we are interested in anything additional you want to say in response to miss elizabeth miss elizabeth if you want to bring any points to our attention please do that in the letter okay and it's not going to be rejected because it doesn't comply with the technical parameters of 28j thank you your honor thank you very much great seeing you thank you counsel i ask you to definitely get a transcript can you check them with that and yes clerk's office staff will be in touch with counsel okay